Filed 4/26/13  P. v. Vargas CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055811 |
| v. | (Super.Ct.No. HEF005066) |
| ARNOLDO ESTEVEZ VARGAS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mark Mandio, Judge.

Affirmed with directions.

Michael B. McPartland, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting, and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION

Defendant Arnoldo Estevez Vargas appeals from judgment entered following a jury conviction for premeditated murder (Pen. Code, § 187, subd. (a)[1]). The jury also found true allegations that the murder was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)) and that defendant personally used a firearm (§ 12022.53, subd. (d)). The trial court sentenced defendant to 50 years to life, plus three years for the gang enhancement.

Defendant contends the trial court erred in denying his request for instruction on provocation (CALCRIM No. 522). Defendant also asserts the trial court erred in imposing a fixed three-year term for the gang enhancement under section 186.22, subdivision (b)(1). We conclude there was no instructional error but reverse the three-year gang enhancement term because the murder conviction carries a life term and, therefore, the gang enhancement must be stricken. The judgment is affirmed in all other respects.

II

FACTS

In November 1998, defendant and Joshua McKendry lived in the Lake Elsinore area and were both members of the Elsinore Young Classics street gang (EYC). The victim, Harry Estrada and his friend, Armando Solis, were members of the Elsinore Vatos

_____

[1] Unless otherwise noted, all statutory references are to the Penal Code.

2

Locos street gang (EVL). EYC and EVL were rival gangs. Estrada's house was located on the same street as McKendry's father's house.

On November 8, 1998, at around 4:00 p.m., while Estrada and Solis were talking in front of Estrada's house, a caravan of three or four vehicles carrying EYC gang members stopped in front of Estrada's house. Eight EYC associates got out of their cars and began fighting with Estrada and Solis.

McKendry testified he rode in one of the caravan vehicles that stopped nearby, in front of his father's house. McKendry ran over to back up his fellow EYC gang members. He saw Estrada fall to his hands and knees. Defendant and the other EYC gang members kicked and punched Estrada. Defendant removed a gun from his waistband and fired four times at Estrada as he tried to crawl away on his hands and knees. Defendant and the other EYC gang members then left the scene in their vehicles. The autopsy confirmed that Estrada was shot once in the arm and three times in the back. He died a short time afterwards.

On November 8, 1998, Officer Zerkel found one expended projectile and seven shell casings at the crime scene. Two expended projectiles were later recovered during Estrada's autopsy. Officer Takenaga determined that the seven shell casings were fired from the same gun and the projectiles were consistent with each other.

After the homicide, defendant absconded to Mexico. Eleven years later, in 2009, he was extradited back to the United States and was interviewed at the Riverside County jail. During his recorded police interview, defendant admitted shooting Estrada, but claimed he shot Estrada when Estrada was running toward him. Defendant explained that

3

he fired at Estrada because defendant was afraid Estrada was going to do something to him. Defendant also said he was unsure whether Estrada was running toward him or away from the others or toward the house Estrada was standing in front of.

Officer Thompson, an expert on Hispanic gangs in Lake Elsinore, testified that in 1998, defendant was a member of the EYC gang. The EYC and EVL gangs were rival gangs. Thompson testified as to EYC's primary criminal activities and predicate offenses, and concluded that Estrada's murder was committed for the benefit of defendant's gang, because it enhanced EYC's reputation for violence.

III

INSTRUCTIONAL ERROR

Defendant contends the trial court prejudicially erred in refusing to instruct on provocation for purposes of negating the premeditation and deliberation elements of first-degree murder. We disagree.

Defense counsel requested the court to give CALCRIM No. 522 on provocation, arguing that provocation can be based on any emotion that causes a defendant to act with passion or without malice aforethought. Defendant argued that evidence Estrada was running toward him supported a finding of provocation. The prosecution argued there was insufficient evidence of provocation because there was no evidence that defendant believed Estrada would inflict fatal or great bodily injury upon defendant. The fight was not a violent two-way struggle and Estrada was attempting to flee because he was outnumbered and had been violently beaten.

4

The trial court rejected the provocation instruction because the evidence established that defendant shot Estrada after eight rival EYC gang members had severely beaten Estrada and were chasing him as he was attempting to flee. Estrada was outnumbered and was not fighting back.

CALCRIM No. 522 states: "Provocation may reduce a murder from first degree to second degree. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder." This instruction is a pinpoint instruction, to be given on request. (*People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1333; see also CALCRIM No. 522 Bench Notes.) A defendant may request, and a trial court must give, pinpoint instructions relating to the theory of the defense. (*People v. Earp* (1999) 20 Cal.4th 826, 886.) However, "a trial court need not give a pinpoint instruction if it is argumentative [citation], merely duplicates other instructions [citation], or is not supported by substantial evidence [citation]." (*People v. Bolden* (2002) 29 Cal.4th 515, 558.)

A defendant is entitled to instruction on the defense theory of provocation "if it is supported by substantial evidence, i.e., if a reasonable jury could conclude the particular facts underlying the instruction existed. [Citations.]" (*People v. Sullivan* (1989) 215 Cal.App.3d 1446, 1450.) "We consider the instructions as a whole and assume the jurors are intelligent persons capable of understanding and correlating all the instructions. [Citation.]" (*People v. Hernandez, supra,* 183 Cal.App.4th at p. 1332.)

"The evidentiary premise of a provocation defense is the defendant's emotional reaction to the conduct of another, which emotion may negate a requisite mental state." (*People v. Ward* (2005) 36 Cal.4th 186, 214-215.)  Provocation, as commonly understood, means "'something that provokes, arouses, or stimulates'; provoke means 'to arouse to a feeling or action[;] . . . to incite to anger.'  (Merriam-Webster's Collegiate Dict. (10th ed. 2001) p. 938; see *People v. Ward* (2005) 36 Cal.4th 186, 215 [30 Cal.Rptr.3d 464, 114 P.3d 717] ['provocation . . . is the defendant's emotional reaction to the conduct of another, which emotion may negate a requisite mental state'].)" (*People v. Hernandez, supra,* 183 Cal.App.4th at p. 1334.)  Provocation arouses the emotions and can give rise to a rash, impulsive decision, and this, in turn, negates premeditation and deliberation.  (*Ibid.*)

At trial, defendant argued the theory of self-defense.  During defendant's recorded interview in 2009, 11 years after the crime, defendant admitted shooting Estrada but claimed he shot Estrada because Estrada was running toward defendant.  Defendant said that when he arrived at the scene, other EYC members had already arrived and were fighting Estrada.  They were beating up Estrada "badly" while chasing him in circles, as Estrada was trying to flee.  While being chased, Estrada ran toward defendant, who was standing on the sidewalk.  Defendant thought Estrada was going to attack him.  Estrada was six to eight feet from defendant when defendant pulled out his gun and started shooting at Estrada.  When defendant fired at Estrada, defendant was standing in front of a nearby house.  Defendant did not know if Estrada was running toward him to attack him or running toward the house to escape into the house.  Defendant fired about three

rounds at Estrada. When defendant first fired at Estrada, Estrada was standing. Defendant did not remember if, when he fired the other shots, Estrada was on the ground. After Estrada fell to the ground, defendant and his EYC companions fled.

Even assuming the homicide occurred as defendant described it in his recorded statement, there was insufficient evidence to support a provocation instruction. Estrada was being chased by eight gang members from defendant's own gang. Estrada was out-numbered and had been badly beaten up. He was fleeing, not fighting, and did not have a weapon. Defendant was not even sure Estrada intended to do anything to defendant. Estrada was fleeing and defendant happened to be in his path. On these facts, there was insufficient evidence that defendant shot Estrada in the immediacy of any ostensible provocation, since there was nothing in the record to show that Estrada represented a threat to defendant.

Not only was there insufficient evidence to support a pinpoint provocation instruction but, in addition, any error in not giving the provocation instruction was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) The trial court instructed the jury on homicide (CALCRIM No. 500), self-defense (CALCRIM No. 505), imperfect self-defense (CALCRIM No. 571), and first and second degree murder (CALCRIM Nos. 520 and 521). Based on these instructions, the jury rejected the defense theories of self-defense and imperfect self-defense, finding that defendant acted with deliberation when he fired at Estrada. It is therefore unlikely that, had the jury been instructed on the provocation pinpoint instruction, the jury would have found defendant did not act with deliberation but, rather, acted rashly, out of fear Estrada would do something to harm

7

him. In addition, there was overwhelming evidence that the incident involved a gang fight, in which defendant's gang was brutally beating up Estrada and defendant deliberately shot Estrada as he attempted to flee. Accordingly, we find no instructional error.

IV

SENTENCING ERROR

Defendant was convicted of first degree murder, and the jury found true the allegation that the murder was committed for the benefit of a criminal street gang. The trial court imposed a 25 year to life sentence on the murder conviction, and a consecutive three-year term on the gang enhancement under section 186.22, subdivision (b)(1). Defendant contends, and the People agree, the trial court erred in imposing the fixed, three-year term for the gang enhancement. Under the exception for felonies punishable by an indeterminate life term under section 186.22, subdivision (b)(5) (formerly section 186.22, subd. (b)(4)), the court should therefore strike the three-year gang enhancement term attached to the murder offense.

Ordinarily, the court may sentence a person who commits a violent felony for the benefit of a criminal street gang with an additional term of 10 years (three years under the former version of the statute in effect in 1998, when the charged crime occurred). (§ 186.22, subd. (b)(1)(C).) Section 186.22, subdivision (b)(5), provides a different penalty for a person who commits a felony punishable by life imprisonment, namely, an increased minimum parole period of 15 years. As noted by the parties, the California Supreme Court held that the Legislature intended to apply this penalty instead of the

8

additional consecutive enhancement term under section 186.22, subdivision (b)(1). (*People v. Lopez* (2005) 34 Cal.4th 1002, 1007; see also *People v. Flores* (2005) 129 Cal.App.4th 174, 187.)  Therefore, the three-year gang enhancement attached to count 1 must be stricken.

V

DISPOSITION

The trial court is directed to strike the three-year gang enhancement under section 186.22, subdivision (b)(1), attached to count 1.  In all other respects, we affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON _____
J.

We concur:

RICHLI _____
Acting P. J.

KING _____
J.

9