Filed 9/25/14  In re David A. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re DAVID A., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAVID A.,<br><br>    Defendant and Appellant. | G048377<br><br>(Super. Ct. No. DL044222)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Cheryl L. Leininger, Judge.  Affirmed in part and reversed in part.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Laura A. Glennon, Deputy Attorneys General, for Plaintiff and Respondent.

In this appeal, we consider the extent to which the passenger in a car may be criminally liable for contraband discovered inside the vehicle. On the particular facts presented here, we find there is ample evidence to support appellant's adjudication for *carrying* an assault weapon that was found in the car in which he was riding. However, appellant's adjudication for *transporting* the weapon must be reversed due to insufficient evidence. We also hold that appellant's adjudication for street terrorism must be reversed because it violates the lesser included offense doctrine. In all other respects, we affirm the judgment.

FACTS

One evening around 9:30 p.m., appellant, Omar Sandoval, and Victor Mondragon, all members of the Anaheim Travelers City gang (ATC), drove into the territory of a rival gang known as Barrio Small Town (BST). Sandoval was driving, appellant was in the front passenger seat, and Mondragon sat directly behind appellant in the back. Their vehicle pulled out of an alley and turned in front of police officers Salvador Enriquez and Richard Browning, who were patrolling the area in a marked squad car. Both cars yielded momentarily before Browning motioned appellant's group to move along.

As appellant's vehicle pulled away, the officers followed it. They noticed the vehicle's left tail light was broken, and a computer check on its license plate turned up a warrant for someone who resembled Sandoval.[1] The officers also noticed appellant was wearing a type of baseball cap favored by ATC members. They thought it was highly suspicious that members of that gang would be travelling in territory claimed by BST.

After following appellant's car a few blocks, the officers activated their overhead lights. Appellant's vehicle slowed at first, but then accelerated quickly down a

---

[1] The warrant was actually for Edgar A., appellant's brother.

narrow alley. The officers followed, turning on their siren. They cornered appellant's vehicle at the end of the alley and promptly exited their squad car. Standing behind their open doors, the officers watched cautiously as the doors on appellant's vehicle slowly opened.

Officer Enriquez ordered appellant and his companions to remain in their car and put up their hands. Mondragon and Sandoval did as told, but appellant got out and stood by his door. He ignored the officers' demands to get back in the car, so Officer Browning began yelling at him to get down on the ground. Meanwhile, Enriquez noticed Mondragon moving around and crouching in the back seat, as if he were trying to hide something. Enriquez instructed him to keep his hands up, but Mondragon lowered them and brought them up twice before finally keeping them up.

By then, appellant had tossed his baseball hat aside and was kneeling on the ground. When Browning ordered him to get up and walk toward him, he complied, but not before "flipping off" the officer with both middle fingers. After appellant was taken into custody, officers found a steak knife in his left front pants pocket. The knife had a four-inch blade and was wrapped in a washcloth.

Mondragon and Sandoval were then removed from the vehicle. On the right rear floorboard near where Mondragon had been sitting, officers found a loaded, semiautomatic pistol and a live round of ammunition. The gun had a two-inch threaded barrel capable of accepting a silencer or suppressor. It was also outfitted to take a detachable magazine, though none was found.

At trial, Anaheim Police Investigator Jamie Pietras testified as a gang expert for the prosecution. He said ATC is a traditional Hispanic street gang whose primary activities include vandalism, weapons possession, aggravated assault, attempted homicide and homicide. Pietras opined that on the night in question, appellant, Sandoval and Mondragon were members of ATC acting in furtherance of the gang. More particularly, he surmised they were out "gang-bang[ing]" in rival territory, "looking to

3

assault another gang member." Pietras said that if they had been successful, it would have boosted their individual reputations as well as the reputation of ATC, because committing violent crimes is the primary way to earn respect in the gang subculture.

In that subculture, Pietras explained, guns are "extremely valuable" because they can be used to facilitate criminal activity. They are also important for protection against rival gangs, and therefore it is imperative for gang members to share information about their guns. When the prosecutor posed a hypothetical to Pietras mirroring the facts of this case and asked him if the "gang member who brought the gun into the car [would be] expected to tell everybody in the car that he ha[d] a gun," Pietras said yes.

Although Pietras said the gun disclosure rule is a universal gang tenet, he admitted gang rules are not always followed in every particular instance. However, in emphasizing the importance of guns to gangs, Pietras said gang members will usually do "whatever [is] necessary" to protect their guns. That includes distracting the police, so the member with the gun can get away or at least have enough time to hide the weapon.

In discussing guns, Pietras also drew a distinction between guns owned by individual gang members and "gang guns," which are purchased and owned collectively by the gang. Access to gang guns is generally shared among all active members of the gang, and each member will usually know where the gun is located. If a gang member loses a gang gun or fails to inform other members when he has it, he will be "taxed" in the form of physical discipline or monetary penalty.

Testifying on his own behalf, appellant said that on the night in question, he was drinking at a friend's house when Sandoval and Mondragon arrived. Appellant knew Sandoval was a gang member, but had only met Mondragon once and did not know his gang status. Appellant decided to tag along when the pair left. He denied knowing where their car was going and claimed the group did not speak while in the car. He also denied being a gang member or knowing a gun was in the car. As to his insolence to the

4

officers, he said he "was stupid" and under the influence of alcohol. He did not explain why he was carrying a steak knife in his pocket that night.

Appellant was charged with the following crimes: Count 1- unlawful assault weapon activity (Pen. Code,[2] § 30600); count 2- having a concealed firearm in a vehicle as a gang member (§ 25400, subds. (a)(1), (c)(3)); count 3- carrying a loaded firearm in public as a gang member (§ 25850, subds. (a), (c)(3)); count 4- carrying a dirk or dagger (§ 21310); and count 5- actively participating in a criminal street gang, aka street terrorism (§ 186.22, subd. (a)). For sentence enhancement purposes, it was also alleged appellant acted for the benefit of a criminal street gang. (§ 186.22, subd. (b).)

After noting that count 2 requires the firearm to be concealed in a vehicle that is "under the person's control or direction" (§ 25400, subd. (a)(1)), the juvenile court determined there was insufficient evidence to sustain that count. However, the court sustained the remaining charges, rejecting as incredible appellant's version of events. Thereupon, the court declared appellant a ward of the court and placed him on probation subject to various terms and conditions.

DISCUSSION

Appellant argues the evidence is insufficient to support the court's finding on two of the charges, unlawful assault weapon activity (count 1) and carrying a loaded firearm in public while a gang member (count 3). We find substantial evidence to support count 3, but count 1 must be reversed for insufficient evidence.

In assessing the sufficiency of the evidence to support a criminal conviction, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. [Citations.] The record must disclose substantial evidence to support the verdict and

_____

    2        All further statutory references are to the Penal Code.

findings – i.e., evidence that is reasonable, credible, and of solid value; evidence that reasonably inspires confidence – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]  When applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*People v. Rios* (2013) 222 Cal.App.4th 542, 559.)  The same standard applies in juvenile cases.  (*In re Winship* (1970) 397 U.S. 358.)  "If the circumstances reasonably justify the verdict, we will not reverse simply because the evidence might reasonably support a contrary finding." (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 830.)

The crime of unlawful assault weapon activity is set forth in section 30600.  Under that provision, "Any person who, within this state, manufactures or causes to be manufactured, distributes, transports, or imports into the state, keeps for sale, or offers or exposes for sale, or who gives or lends any assault weapon or any .50 BMG rifle, except as provided by this chapter, is guilty of a felony, and upon conviction shall be punished by imprisonment . . . for four, six, or eight years." (§ 30600, subd. (a).)

It is undisputed the gun found in appellant's car constituted an assault weapon for purposes of this provision.  The only question is whether he *transported* the weapon, so as to be guilty of violating the statute.  In comparison, the other statute at issue, section 25850, targets the act of *carrying* a loaded firearm in public. (§ 25850, subd. (a).)  As we explain below, this is an important distinction for purposes of assessing the scope of appellant's culpability.

It is also important to keep in mind there are two different theories under which appellant may be found to have committed the subject offenses.  First, as a direct perpetrator, he could be liable for constructively possessing the gun while he was traveling in the car.  Second, he could be liable as an aider and abettor if he knowingly assisted Mondragon and/or Sandoval in committing the crimes at issue.

6

The Attorney General argues appellant constructively possessed the gun for purposes of the carrying offense (§ 25850, subd. (a)), and he aided and abetted Mondragon for purposes of the transportation offense (§ 30600, subd. (a)). However, in arguing these two theories, the Attorney General conflates them in a confusing fashion. For example, she asserts, "The evidence of appellant's constructive possession [of the gun] combined with his membership and participation in ATC demonstrates he aided and abetted the transportation" of the gun. But if appellant constructively possessed the gun, it wouldn't matter whether he aided and abetted its transportation. Conversely, if he aided and abetted its transportation, it wouldn't matter whether he constructively possessed it. (See generally *People v. King* (2000) 81 Cal.App.4th 472, 477 ["one can aid and abet the transportation of narcotics without possessing them"].)

Thus, the first question we must address is whether there is substantial evidence appellant constructively possessed the gun, so as to make him liable for transporting and carrying the weapon. We think not.

"Possession may be physical or constructive, and more than one person may possess the same contraband. [Citation.]" (*People v. Miranda* (2011) 192 Cal.App.4th 398, 410.) Constructive possession requires that a defendant have the right to exercise dominion or control over either (a) the contraband or (b) the place the contraband is found. (*Ibid.*; *People v. Pena* (1999) 74 Cal.App.4th 1078, 1083-1084; *People v. Rushing* (1989) 209 Cal.App.3d 618, 622; 2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against Public Peace and Welfare, § 107, p. 753.) While circumstantial evidence can be enough to show dominion or control (*People v. Miranda, supra*, 192 Cal.App.4th at pp. 410-411), mere presence or proximity to the contraband is not enough. (*People v. Small* (1988) 205 Cal.App.3d 319, 326; *People v. Zyduck* (1969) 270 Cal.App.2d 334, 335.)

Appellant did not drive or own the car in which the gun was found. (See generally *People v. Rogers* (1971) 5 Cal.3d 129, 135 ["the driver or owner of an

7

automobile has the responsibility to prevent the conveyance of contraband by himself or his passengers"].)  Nor did he have dominion or control over the area where the gun was located, which was the floorboard *behind* appellant's seat, near Mondragon.  (Compare *People v. Williams* (1971) 5 Cal.3d 211, 215 [defendant deemed to have dominion and control over the floorboard in *front* of his seat]; *People v. Nieto* (1966) 247 Cal.App.2d 364, 368 [defendant deemed to have dominion and control over the area under his *own* seat].)  Appellant wasn't seen in the back seat of the car or making any movements or gestures toward the firearm either.  By virtue of his common gang ties with the other occupants of the car, it's reasonable to believe appellant knew about the gun.  After all, the gang expert testified that disclosure of the gun's presence would be fully expected under the circumstances presented in this case.  But appellant's knowledge of and proximity to the gun are not enough to sustain a finding he constructively possessed the weapon.  (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417 (*Sifuentes*); *In re Elisabeth H.* (1971) 20 Cal.App.3d 323, 330.)

The Attorney General argues appellant not only knew about the gun, he had the right to control the weapon – thus establishing constructive possession – because it was one of ATC's "gang guns" to which he had equal access along with other members of the gang.  The gang expert did testify that all members in good standing in a gang will have access to its "gang guns."  However, he did not say all guns possessed by gang members are "gang guns."  Rather, he limited the definition of a "gang gun" to one which is bought and owned collectively by the gang.  The prosecutor did not present any evidence the particular gun found in this case had had been purchased or was owned by appellant's gang.  In fact, there was no evidence as to who purchased or owned the weapon.  Absent evidence the firearm was collectively owned by ATC members as a "gang gun," we cannot assume appellant had the right to access and control it simply by virtue of his membership in that gang.

Alternatively, the Attorney General argues the gun effectively became a "gang gun" due to the fashion in which it was used. The state claims that because appellant and his cohorts brought the gun with them when venturing into enemy territory, everyone in their car would have free access to the weapon if needed. Although the gang expert testified the members of appellant's group wouldn't hesitate to pass around the gun if they were violently confronted by rival gang members, there is no evidence they were ever so confronted or had any need to utilize the gun on the night in question. Thus, the necessary condition for appellant to gain control over the gun under this theory simply did not exist. He was certainly in close proximity to the weapon, but as this court's decision in *Sifuentes, supra,* makes clear, that is not enough to prove he possessed it.

In that case, Sifuentes and another gang member were arrested in a motel room and charged with possessing a firearm that was found under the mattress of a bed that was in the room. Relying on the theory of constructive possession, the state argued Sifuentes' conviction for possessing the gun was supported by expert testimony that the gun was a "gang gun." (*Sifuentes, supra*, 195 Cal.App.4th at pp. 1417-1419.) However, as in our case, the record in *Sifuentes* failed to establish the gun in question was actually a "gang gun" or that everyone in proximity to the weapon had the right to control it. (*Ibid.*) Despite evidence that Sifuentes knew about the weapon and could have accessed it, we held "[t]he *possibility* Sifuentes *might* have had the right to exercise control over the gun" was not enough to support his conviction for possessing the gun. (*Id*. at p. 1419, italics added.)

Likewise here, the *possibility* appellant might have had the right to exercise control over the gun in his car is not enough to support a finding that he possessed it. Having travelled into enemy territory with the gun, appellant and his cohorts were certainly in a more offensive position when they were arrested than were Sifuentes and his codefendant, who were merely hanging out in a motel room prior to their arrest. But

there is no evidence the conditions necessary to allow appellant to control the weapon had arisen by the time he was taken into custody. Because there is no evidence appellant "knowingly exercised a right to control" the gun (*Sifuentes, supra*, 195 Cal.App.4th at p. 1417), his adjudications for transporting and carrying the weapon cannot be sustained under the theory of constructive possession

The Attorney General's alternative theory – that appellant acted as an aider and abettor – gains more traction. To be liable as an aider and abettor, a person must knowingly intend to further the perpetrator's unlawful act and assist him in that act. (*People v. Lopez* (2013) 56 Cal.4th 1028, 1069.) It is not enough that the person simply wants to help the perpetrator achieve his unlawful ends; rather, he must intentionally contribute to the achievement of those ends. (*People v. Montoya* (1994) 7 Cal.4th 1027, 1039.)

Judging by appellant's actions and the circumstances surrounding his arrest, we are confident he knew about the gun and intended to help his companion Mondragon retain possession of the weapon. After the police pursued and confronted appellant's group, appellant exited the car and attracted the officers' attention while Mondragon scurried about in the back seat of the vehicle in the area where the firearm was recovered. As the gang expert explained, appellant's actions in this regard are consistent with what a gang member would be expected to do in that situation in order to protect the gun. Indeed, by distracting the police and delaying the gun's discovery, albeit temporarily, appellant's actions did allow Mondragon to possess the weapon a bit longer than if appellant had complied with the officers and surrendered immediately. Thus, under the theory of aiding and abetting, there is sufficient evidence to uphold appellant's adjudication for carrying a loaded firearm in public as alleged in count 3.

The unlawful assault weapon activity count (count 1) is a different matter, however. It requires proof appellant *transported* the gun. But by the time appellant got out of the car to distract the police, his car was no longer moving. Therefore, his actions

10

did not aid or assist Mondragon or Sandoval in *transporting* the gun at that time.  The Attorney General argues appellant aided and abetted the gun's transportation earlier on while he was riding around in the car with Mondragon and Sandoval.  But other than being present in the car, we cannot see that appellant did anything to help them transport the gun.  In fact, by wearing a hat associated with his gang, appellant actually *impeded* their efforts in that regard because the hat was a big part of reason the police suspected they were gang members and decided to pull them over.

Appellant's presence in the vehicle as a gang member and his knowledge of the gun are certainly factors to be considered in assessing his culpability for transporting the gun.  But it has long been established that "[i]f the defendant 'did not act to aid, assist, or abet' the perpetration of the crime, he is guilty of no violation of law from the mere fact that he was present" and knew of its commission.  (*People v. Woodward* (1873) 45 Cal. 293, 294, followed in *In re Elisabeth H., supra*, 20 Cal.App.3d at p. 329 [overturning appellant's drug conviction where the evidence showed she was merely a passenger in the vehicle in which marijuana was found]; see also *People v. Simon* (1955) 45 Cal.2d 645 [evidence that defendant was seen walking with a friend who illegally possessed alcohol was insufficient to support his conviction as an aider and abettor].)  Because the record does not contain substantial evidence appellant aided and abetted the transportation of the gun that was found in his vehicle before the car came to rest, and because, as explained above, he did not constructively possess the weapon at any time, his adjudication for unlawful assault activity cannot stand.

Nor can his adjudication for active participation in a criminal street gang, as alleged in count 5, because, as the Attorney General admits, that offense is a lesser included offense of carrying a loaded firearm in public as a gang member.  (*People v. Flores* (2005) 129 Cal.App.4th 174, 184.)  Therefore, we will reverse the trial court's true finding on count 5, as well.

## DISPOSITION

Appellant's adjudications for unlawful assault weapon activity (count 1) and active participation in a criminal street gang (count 5) are reversed. In all other respects the judgment is affirmed.


                                               BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.