Filed 7/26/23  P. v. Ruben E. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D080870 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. J244351) |
| RUBEN E., | |
| Defendant and Appellant. | |

APPEAL from an order and judgment of the Superior Court of San Diego County, Robert J. Trentacosta and Rohanee Zapanta, Judges. Affirmed.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Melissa Mandel and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

In this seemingly simple case, the juvenile court found that 14-year-old Ruben E., accompanied by two youthful companions, committed an assault with a deadly weapon (ADW) by stabbing John M. during an early morning altercation at a trolley station.[1] It also found that in the course of committing the felony, Ruben personally inflicted great bodily injury (GBI) on the victim, who was not an accomplice, making it a "serious felony" within the meaning of Penal Code section 1192.7, subdivision (c)(8).[2] In a complicated argument made for the first time on appeal, Ruben contends that the GBI finding was not supported by substantial evidence because John was Ruben's accomplice to an underlying target crime of disturbing the peace by participating in a public fight. (§ 415, subd. (1).) Ruben claims this is crucial because the crime of public fighting, although uncharged, might have provided a basis for his ADW conviction on the theory that the stabbing was a "natural and probable consequence" of the public fight.

We reject Ruben's argument because the court made no finding that the participants agreed to a public fight. Nor was it required to reach such a conclusion. Although John may have been yelling as he approached the boys, the juvenile court believed the three young men confronted John looking for a fight, negating the inference that John accepted an invitation to brawl. There is, accordingly, more than substantial evidence to support the adjudication order and judgment, which we affirm.

---

[1] We initially refer to the defendant and victim in this case by first name and last initial and thereafter only by first name in accordance with California Rules of Court, rule 8.90(b)(4).

[2] All statutory references are to the Penal Code unless otherwise indicated.

FACTUAL AND PROCEDURAL BACKGROUND

One summer night, Ruben found himself intoxicated and unsupervised at a trolley station in downtown San Diego at approximately 4:30 a.m. He was with four other youths, two males and two females. At 14 years old, Ruben was the youngest of the group; one of his companions was 22 years old and the rest were teenagers.

John, an older man, said something to Ruben's group while he crossed the tracks toward them. Ruben and his two male friends crossed to the edge of the station to meet him as he approached. Ruben took out his knife and held it in the front pocket of his sweatshirt. According to Ruben, he had never met John and did not know what he was saying. Based on a highly pixelated video of the incident, the trial court believed Ruben and his group knew they were walking into a fight and described them as "ready to rock."[3]

After a verbal exchange, John punched one of Ruben's friends. Ruben's other companion delivered a punch to John before the first companion rejoined the fight. At this point, John turned away from the melee and shielded his face. While John turned away, Ruben stabbed him in the side.

Ruben ran back to a bench and waited for his friends to return. Later, John joined the group on the trolley platform. One of Ruben's companions brought the victim to a security guard to help him find medical care. Later, a police officer found John pressing a paper towel to a stab wound on his side. That night, the police located Ruben and found the knife on his person.

The San Diego District Attorney filed a juvenile wardship petition (Welf. & Inst. Code, § 602) alleging that Ruben assaulted John with a deadly

_____

[3] John did not testify. A woman on the trolley platform turned around to see the first punch thrown by Ruben's companion, but nothing that preceded it. The only evidence about the moments preceding the fight came from the video and Ruben's testimony.

weapon (§ 245, subd. (a)(1).)  The petition further alleged that he personally used a deadly weapon (§ 1192.7, subd. (c)(23)) and, during the commission of a felony, personally inflicted great bodily injury on someone who was not an accomplice (§ 1192.7, subd. (c)(8)).  During an adjudication hearing, the juvenile court found all allegations true, declared Ruben to be a ward of the court, and placed him on probation subject to various terms and conditions.

## DISCUSSION

Section 1192.7 specifies that a crime is considered a "serious felony" with attendant consequences whenever the defendant "personally inflicts great bodily injury on any person, other than an accomplice."  (*Id.*, subd. (c)(8).)  The juvenile court found this special allegation to be true.  On appeal, Ruben argues there is no substantial evidence to support this finding because the victim, John, was an accomplice as a matter of law in Ruben's commission of the ADW.  He reaches this conclusion in successive steps.

First, Ruben argues the undisputed evidence shows that John and Ruben's group jointly committed the preliminary crime of violating section 415, subdivision (1)—commonly referred to as "disturbing the peace"—by agreeing to fight in public.  As a result, he says, he and John were necessarily accomplices in the commission of that intended crime.  Finally, he contends that his assault on John with a deadly weapon was, as a matter of law, a natural and probable consequence of their agreement to participate in a public fight.  (See generally *People v. Morales* (2021) 67 Cal.App.5th 326; *People v. Flores* (2005) 129 Cal.App.4th 174.)

This argument fails at its inception.  Based on inferences drawn from his own testimony, much of which the trial court did not accept, Ruben assumes that John and members of Ruben's group agreed to a public fight.

But the court made no such finding. It merely determined there was "some verbal confrontation" followed by the first punch thrown by John.

The premise for Ruben's substantial evidence argument is that John and Ruben's group must have agreed to disturb the peace by fighting. But it does not necessarily follow that the "verbal confrontation" amounted to an express or implied agreement to engage in a fight. The video included no sound, and even Ruben did not testify to the words that were exchanged. Indeed, the juvenile court specifically found that the boys "were not afraid" and "went over on a three-on-one situation with an unarmed man." That John apparently threw the first punch is as easily characterized as a fearful response to being outnumbered and threatened as it is evidence of mutual combat.

In the end, Ruben's contention simply offers one interpretation of the evidence, but it is far from the only reasonable interpretation and certainly not one the juvenile court was compelled to accept. If there was no public fight—and there is more than substantial evidence to support that conclusion—there was no crime for John to be an accomplice to, and Ruben's substantial evidence argument fails.

## DISPOSITION

The adjudication order of August 11, 2022 and judgment are affirmed.

DATO, Acting P. J.

WE CONCUR:

DO, J.

CASTILLO, J.