Filed 7/7/23  P. v. Lee CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HO YOUNG LEE,<br><br>    Defendant and Appellant. | H047242<br>(Santa Clara County<br>Super. Ct. No. C1634468) |

Defendant Ho Young Lee was convicted of several crimes arising from two separate incidents, one involving criminal threats toward a peace officer and another involving an assault outside a nightclub in downtown San Jose.  Many of the crimes included gang allegations, and defendant was also convicted of active gang participation.

Defendant notes that during the pendency of this appeal, the Legislature substantially amended Penal Code section 186.22.  The Attorney General concedes that as a result the judgment must be reversed and remanded for possible retrial on the substantive gang count and the gang allegations.  Defendant's remaining appellate claims challenge the sufficiency of evidence supporting the gang allegations, the substantive gang participation conviction, and the dirk or dagger possession conviction (which he also contends must be reversed because the count was dismissed for insufficient evidence after the preliminary hearing and never refiled).  Defendant also asserts sentencing error relating to certain enhancements, and he seeks the benefit of ameliorative sentencing legislation.

We agree the judgment must be reversed and the matter remanded for possible retrial on the substantive gang count and gang special allegations due to amendments to Penal Code section 186.22. We also agree with the parties that the trial court was incorrect to stay weapon enhancements that must be either imposed or stricken. We reject the other claims of error.

## I. TRIAL COURT PROCEEDINGS

Defendant was charged[1] with crimes relating to multiple victims. (Unspecified statutory references are to the Penal Code.) As to victim peace officer Jonathan Byers, defendant was charged with making criminal threats (§ 422; count 1); resisting an executive officer (§ 69; count 2); possessing a dirk or dagger (§ 21310; count 3); and attempting to dissuade a witness (§ 136.1, subd. (b)(2); count 4). As to victim Luc Mai, defendant was charged with attempted murder (§§ 187, 664; count 5) with allegations that he committed the crime for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)), personally inflicted great bodily injury (§ 12022.7, subd. (a)), and personally used a deadly weapon (§ 12022, subd. (b)(1)); and mayhem (§ 203; count 9), with allegations that he committed the crime for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)) and personally used a deadly weapon (§ 12022, subd. (b)(1)). As to victim Karl Zaleski, defendant was charged with attempted murder (§§ 187, 664; count 6) with allegations that he committed the crime for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)) and personally used a deadly weapon (§ 12022, subd. (b)(1)). As to victims Angel Mai Zaleski, Michael Phan, Tina Mai, Tyler (Tai) Mai, and Alynna Hernandez, defendant was charged with one count per victim of assault with a deadly weapon (§ 245, subd. (a)(1); counts 7, 10, 11, 12, and 13) with allegations that he committed the crime for the benefit of a criminal street gang (§ 186.22,

---

[1] The operative first amended information is not in the record on appeal and could not be obtained from the superior court clerk. As did the parties in their briefing, we rely on the verdict forms and a summary of the charges from defendant's demurrer.

2

subd. (b)(1)(C)) and personally used a deadly weapon (§ 12022, subd. (b)(1)). Defendant was charged with one count of active gang participation (§ 186.22, subd. (a); count 15), and was also alleged to have committed a prior strike (§ 667, subds. (b)–(i)). (We omit summaries of counts 8 and 14 because they were not presented to the jury.)

### A. OFFICER JONATHAN BYERS

Defendant challenges his conviction for dirk or dagger possession, but otherwise does not contest the factual basis for his convictions for the offenses relating to San Jose Police Department Officer Byers. We summarize the officer's testimony because it provides context for the gang-related issues in this appeal. Officer Byers testified that he and other officers broke up a fight between a group of Asian males and a group of "white and black male adults" one night in December 2015 in downtown San Jose. Byers grabbed defendant's arm after he refused an order to disperse. Defendant encouraged the other Asian males to continue fighting, and they did so. Defendant also told them "to 'Come over and get this guy off me.' " The men immediately approached Byers and started pushing him away from defendant. Byers eventually noticed "454" tattooed on the back of defendant's head. Based on his training, Byers concluded defendant was a gang member. In a search incident to defendant's arrest, officers found a folding knife with a four-inch blade clipped inside his pants. The knife had been modified so that it "could be opened with a quick flick of the wrist and be deployed very quickly."

Byers saw defendant several times in the months following that arrest. Defendant was usually with a group of people that Byers suspected were gang members. Defendant appeared to occupy a "command position" with the group. "When he moved, the rest of the group moved. He was typically in the center. When he spoke to somebody, the rest of the group would then flank that person, surround them on either side."

### B. MAI FAMILY

Defendant challenges his conviction for active gang participation, but does not otherwise contest his convictions for the substantive offenses related to the Mai family

3

group. Because defendant's appellate briefing focuses on the gang issues, we provide a truncated summary of testimony about the assault on the group.

### 1. Luc Mai

Luc Mai testified that he went out in downtown San Jose one night in March 2016 with family and friends to celebrate being hired as an air traffic controller. They started the evening meeting for drinks around 8:00, and then went to a nightclub around 10:00. Luc left the nightclub around 1:30 a.m. with Angel Mai Zaleski, Karl Zaleski, Tyler Mai, Tina Mai, Alynna Hernandez, and Michael Phan. (We sometimes refer to members of the Mai family by first name for clarity, meaning no disrespect.) The group waited on the street outside the club while one person went back inside to get something they had forgotten.

Luc noticed a group of Asian males on the side of the street who were "kind of chaotic, yelling, screaming." Many of those men got into a car and drove away while others stayed. Luc's attention was drawn to one of the men wearing bright clothing (identified at trial as Hai Nguyen). Nguyen was "lingering, walking around up and down the street." A car pulled up, and people (including defendant) got out. Defendant was dressed in all black, and wearing a hoodie. Defendant directed his attention to Luc and "started shouting, 'You want some of this? I can fucking kill you. You don't fucking know me.' " Luc had never met defendant, and initially did not realize defendant was talking to him. Luc shouted back at defendant, "I don't know you" and acknowledged "cussing at him as well." No one in the Mai family group threatened defendant. Defendant continued to yell, " 'I'll fucking kill all of you.' "

Tyler pushed Luc away and told him it was not worth the fight. Defendant punched Angel and knocked her to the ground. Luc checked on her and saw that she was unconscious. Luc noticed Hai Nguyen had started a fist fight with Karl Zaleski. Luc saw that defendant was standing about five feet from him, holding a black knife. Defendant walked toward Tyler and Luc, and Luc punched defendant in the face. Defendant started

4

slashing the knife forward in a downward motion toward Luc. Luc was stabbed several times, receiving lacerations to his face, his ear was almost entirely severed, and a stab wound through his left bicep that cut his radial nerve.

Defendant ran toward Hai Nguyen and Karl Zaleski. (Testimony from Michael Phan confirmed that defendant ran toward Nguyen and Zaleski after fighting with Luc, and that defendant "ran up to get his friend but ended up stabbing Mr. Nguyen multiple times." Tai Mai also described that encounter in his testimony.) Luc and multiple family members jumped on defendant's back, knocked him to the ground, and disarmed him.

### 2. Angel Mai Zaleski

Angel Mai Zaleski's testimony about the evening leading up to the interaction with defendant generally matched Luc's testimony. Angel testified that defendant made verbal "catcalling" advances toward her while she was waiting outside the club. Someone from her group told defendant to stop being inappropriate, and defendant became angry. Defendant said he " 'could do what the fuck [he] want[ed].' " He asked Angel, " 'Bitch, what the fuck are you looking at?' " Defendant approached the group holding a knife, Tina started filming him with her phone, and defendant threatened to kill them if she did not put the phone away. Defendant raised his arm, and then Angel's next memory was waking up on the ground. She saw "spotty black spots" and was in a daze. A big fight was happening all around her. She saw defendant fighting with Luc, and then saw defendant running toward Zaleski and Nguyen "waiving his knife ... to lacerate and, basically, hurt anybody that was in his way." She and several people eventually jumped on top of defendant.

### 3. Karl Zaleski

Karl Zaleski testified that he noticed his wife Angel in a verbal altercation with defendant on the street outside the nightclub. He saw defendant holding a knife, and started backing away with Angel. Angel was knocked to the ground. Someone other than defendant started fighting with Zaleski, and the two grappled and wrestled. After

5

Zaleski and the other person stopped fighting, Zaleski noticed Luc was on the ground and bloody. Zaleski later noticed his own shirt was in shreds, as though cut by a knife. He did not sustain any knife wounds, and he could not remember how the shreds occurred.

Zaleski testified that he was discouraged from discussing the case with police by his brother-in-law, Huy, because "he knows what type of gangs these are, 'You don't want to get – get involved.' " Zaleski heard that Huy also attempted to persuade other family members not to cooperate with police, telling them, " 'You guys can't talk to the police. It's stupid of you guys. This is ... a gang incident. You don't want to be involved.' "

### 4. Hai Nguyen

Coparticipant and former codefendant Hai Nguyen testified under subpoena and was given immunity in exchange for his testimony. He acknowledged being convicted by plea (to assault with a deadly weapon with a gang enhancement) for his conduct the night of the assault on the Mai family group. He acknowledged that the gang involved in the incident was the 454 criminal street gang, but he denied being a 454/EVO member. He acknowledged that as a condition of probation he may not knowingly possess clothing or other items that suggest an affiliation with a criminal street gang.

Nguyen had known defendant for over 10 years; they were good friends, but Nguyen denied having any friends in common with defendant. Nguyen previously dated defendant's sister. He knew defendant had a large "454" tattooed on his head. He acknowledged being convicted of disturbing the peace with defendant for conduct that occurred in July 2013.

Nguyen testified that he went with a friend to downtown San Jose in March 2016 on the night of the Mai family encounter. Nguyen met up with defendant around 11:00 p.m. Nguyen was drinking and had a "good buzz." They drank with some friends at a club until 1:00 or 1:15 a.m. Nguyen, defendant, and a friend left the club and walked toward a car to drive home. Nguyen saw some women, tried to talk to them, and "got

6

denied." A man confronted Nguyen and told him to leave. Nguyen and the man argued and cursed at one another, and Nguyen backed away.

Nguyen testified that a man named Karl attacked him as Nguyen was trying to get into a car with defendant. The man had been with the women Nguyen tried to approach. Karl punched Nguyen in the face. Nguyen testified he was "beat[en] up by three, four guys." Nguyen testified that he covered himself with his arms and did not attempt to fight back. He was eventually able to get away and sat down in the back of a car. Nguyen noticed he had been stabbed in the face, back, and neck, but he stated he did not know who stabbed him.

## C. GANG EVIDENCE

### 1. Prosecution Gang Expert

San Jose Police Sergeant Doug Tran testified as an expert in "Asian criminal street gangs, with particularity as to 454/EVO." He testified about an umbrella gang in San Jose called the Vietnam Gang, abbreviated as "VN." VN created two subsets around 2010, 454 and EVO. The 454 subset advertised itself as music production company. EVO and 454 merged into a single gang around 2014. Tran had investigated those gangs consistently since 2010, including through surveillance and wiretaps. Defendant was the target of a wiretap, though it is unclear what evidence resulted from that wiretap. A recording of a jail call was played at trial involving defendant and Khanh Nguyen, whom Tran identified as a 454 gang member.

Tran testified that the 454/EVO gang had at least three members. He had reviewed photographs and identified several individuals as gang members, including coparticipant Hai Nguyen, defendant, and Christian Sung. Tran opined that defendant was a 454/EVO gang member based on observing him during surveillance associating with gang members, the "454" tattoo on the back of his head, and "talking to other people that identified him."

7

Sergeant Tran testified that, unlike other criminal street gangs, Asian street gangs do not associate with specific colors; he opined this was to avoid law enforcement detection. Common tattoos for the gang included "454" and "EVO," though not all members have tattoos. A non-gang member with a "454" tattoo would likely be physically assaulted by 454/EVO gang members. Violence and power are valued traits for the 454/EVO gang. Creating fear helps the gang's reputation by dissuading people from reporting crimes and testifying against gang members; by ensuring payment of extortion demanded by the gang; and by protecting the gang from stealing by drug dealers. The primary activities of the 454/EVO gang include drug trafficking; violent assaults; witness intimidation; money laundering; and illegal gambling. Tran testified that 454/EVO members engage in counterintelligence and countersurveillance. They also try to obtain police reports so that they can intimidate witnesses. He noted a former San Jose Police Department officer was currently under indictment for leaking information to 454/EVO members about pending cases.

Tran testified about a group assault at an IHOP restaurant involving Hai Nguyen, Christian Sung, defendant, and others. Video of that incident was admitted into evidence and played for the jury. Tran testified that the video showed a group assault, followed by the group running away together. He opined the assault benefited the gang's reputation by showing the gang was powerful and would respond to perceived disrespect with violence. The event led to Sung's conviction of assault with force likely to cause great bodily injury, and a certified record of the conviction was admitted into evidence.

Posing a hypothetical based on the circumstances in the charged crimes, the prosecutor asked whether Tran would expect a 454/EVO gang member to respond violently if he witnessed a friend being disrespected by a woman in downtown San Jose. Tran indicated a violent repercussion was likely, to show that the gang does not tolerate disrespect from anyone. Tran indicated that any other gang members present would be expected to join in the violence to demonstrate their loyalty to the gang. Tran opined that

8

even if the victim is not a rival gang member, the attack would help the gang's reputation by instilling fear in victims and witnesses about reporting crimes.

### 2. Defense Gang Expert

Douglas Fort testified as an expert in the "application of [section] 186.22 to the current case and as to criminal street gangs." He had never spoken with a member of EVO or 454. His familiarity with the gang came from what he learned while watching certain testimony in defendant's case (including all of Sergeant Tran's testimony); reading Sergeant Tran's preliminary hearing testimony; and online research about the 454 Entertainment Company. He had never before testified as an expert about an Asian criminal street gang in Santa Clara County.

Based on the evidence he reviewed, Fort opined that there was inadequate evidence to conclude defendant was a gang member. He stated on direct examination that he did not have enough evidence to determine whether Hai Nguyen was a gang member, but acknowledged on cross-examination that he did not watch Nguyen's testimony and was unaware he had admitted to assault with a gang enhancement in the present case.

Fort stated he did not believe the assault on the Mai family was gang-related, nor that it benefited a criminal street gang. No hand signs were thrown; no gang names or slogans were heard (such as "EVO"); he saw no evidence that anyone claimed the crime on behalf of a gang on social media or elsewhere; and there was no evidence the gang profited monetarily from the assault. He further opined that assaulting a woman would not benefit a criminal street gang because it would be perceived as cowardly and would create unnecessary enemies.

### D. VERDICTS AND SENTENCING

The jury convicted defendant on all counts presented for verdict (counts 1 through 7, 9 through 13, and 15). The jury found true all special allegations as to those counts. In

a bifurcated proceeding, the trial court found true the prior strike conviction allegation. Defendant was sentenced to a determinate prison term of 57 years.

## II.    DISCUSSION

### A.  RETRIAL ON THE GANG COUNT AND SPECIAL ALLEGATIONS

Assembly Bill No. 333 (2021–2022 Reg. Sess.) amended section 186.22 in several substantive areas.  (Stats. 2021, ch. 699, § 3.)  It narrowed the definition of a "criminal street gang" to require an "ongoing, *organized* association or group of three or more persons."  (§ 186.22, subd. (f), italics added.)  It amended section 186.22, subdivision (f) to require that a pattern of criminal gang activity be "*collectively* engage[d] in" by gang members.  (§ 186.22, subd. (f), italics added.)  It narrowed the definition of " 'pattern of criminal gang activity' " for purposes of predicate offenses to require "that (1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang 'members,' as opposed to just 'persons'; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently charged offense.  (§ 186.22, subd. (e)(1), (2).)"  (*People v. Tran* (2022) 13 Cal.5th 1169, 1206 (*Tran*).)  And it "narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any 'common benefit' be 'more than reputational.'  (§ 186.22, subd. (g).)" (*Tran*, at p. 1206.)

We agree with the parties that defendant is entitled to the ameliorative benefit of those changes under the rule of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).  The judgment must be reversed and the matter remanded for possible retrial on the substantive gang count and the gang special allegations.  Because of the remand for possible retrial, we do not reach defendant's arguments about whether the trial court abused its discretion in admitting evidence about coparticipant Nguyen's plea agreement.

If the prosecution elects to retry that count or any of the gang allegations, defendant will be free to litigate the admissibility of that evidence in the context of the limited retrial.

### B. SUFFICIENCY OF GANG EVIDENCE

We address defendant's arguments about the sufficiency of the evidence supporting the substantive gang count and the gang special allegations because evidentiary insufficiency would bar retrial under the double jeopardy clause of the federal constitution. (*Burks v. U.S.* (1978) 437 U.S. 1, 11.) For purposes of this analysis, we apply the version of section 186.22 in effect when the crimes are alleged to have been committed, and we consider the same evidence considered by the jury—including the evidence that defendant challenges on appeal regarding coparticipant Nguyen's plea agreement—because a "reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause." (*Lockhart v. Nelson* (1988) 488 U.S. 33, 40–42; *People v. Cooper* (2007) 149 Cal.App.4th 500, 522.)

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) We do not reweigh evidence or second-guess credibility determinations. (*People v. Ramirez* (2022) 13 Cal.5th 997, 1118.) We presume the existence of every fact that the trier of fact could reasonably deduce from the evidence to support the judgment. (*Ibid.*) To overturn a conviction based on insufficient evidence, "it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

### 1. Sufficient Evidence Supports the Active Gang Participation Count

The jury was properly instructed with the version of section 186.22, subdivision (a) in effect when defendant was tried, which required the prosecution to

establish three elements:  defendant actively participated in a criminal street gang; he knew while participating in the gang that members of the gang engage in or have engaged in a pattern of criminal gang activity; and he willfully assisted, furthered, or promoted felonious criminal conduct by members of the gang.

Substantial evidence supports beyond a reasonable doubt that defendant actively participated in the 454/EVO gang.  Defendant had a "454" tattoo on the back of his head.  Tran opined that a non-gang member with a "454" tattoo would likely be physically assaulted by 454/EVO gang members.  Contrary to defendant's suggestion that "454 is a music group" and therefore defendant's tattoo does not indicate gang membership, Tran testified that in addition to being a subset of the VN umbrella gang, 454 *also* advertised itself as a music production company.  Defendant associated with people Tran identified as 454/EVO members, including during the IHOP incident that led to Sung's conviction for one of the predicate offenses (assault with force likely to cause great bodily injury).  Defendant was the target of a wiretap related to the gang investigation, and defendant was recorded on a jail call talking to 454 gang member Khanh Nguyen.  (Defendant's argument that "Sergeant Tran never once intercepted a call that included [defendant]" is belied by the jail call evidence.)  And Officer Byers testified that defendant appeared to have a position of authority in the group of Asian males defendant associated with in the downtown San Jose area.

Substantial evidence supports beyond a reasonable doubt that defendant knew 454/EVO gang members engaged in a pattern of criminal gang activity.  Defendant was present at the IHOP when Sung assaulted someone with force likely to cause great bodily injury.  Tran testified the assault benefited the 454/EVO gang by showing it was powerful and would respond to perceived disrespect with violence.  Defendant was also present at the scene of the assault on the Mai family group, which led to coparticipant Hai Nguyen's conviction for assault with a deadly weapon.  Nguyen admitted the allegation that the crime was gang-related, and he acknowledged the gang referenced was the 454

12

gang. Tran also opined that Nguyen was a gang member. From the foregoing, the jury could reasonably infer defendant knew that 454/EVO gang members engaged in a pattern of criminal gang activity.

Substantial evidence supports beyond a reasonable doubt that defendant willfully assisted, furthered, or promoted felonious conduct by members of the gang. First, substantial evidence supports beyond a reasonable doubt that defendant committed the underlying felony with Hai Nguyen, whom Tran opined was a gang member based on Nguyen committing past crimes with 454 members. (Nguyen also confirmed during his testimony that he was convicted of assault with a deadly weapon with a gang enhancement in this case, and the jury was not required to credit Nguyen's explanation that he accepted a plea agreement solely to get out of jail.) Second, substantial evidence supports beyond a reasonable doubt that defendant willfully assisted, furthered, or promoted Nguyen's criminal conduct. Several percipient witnesses testified that defendant ran toward Hai Nguyen and Karl Zaleski waving a knife after attacking Luc Mai. That testimony supports a finding that defendant ran to the aid of fellow gang member Nguyen, who was assaulting Zaleski. Defendant suggests that he could not promote or assist Nguyen's criminal conduct because defendant and not Nguyen started the fight. But a finding that defendant was promoting or assisting Nguyen's criminal conduct by running to Nguyen's aid in the fight with Zaleski does not depend on who started the altercation. Defendant also disputes how he could "promote, further, or assist the criminal conduct of Nguyen when [defendant] stabbed Nguyen[.]" We note that section 186.22 does not require successful assistance, but merely evidence of willful assistance.

### 2. Sufficient Evidence Supports the Gang Special Allegations

The jury was properly instructed that in order to prove the gang special allegations, the version of section 186.22, subdivision (b) in effect when defendant was tried required the prosecution to establish two elements: that defendant committed or

13

attempted to commit the charged crimes for the benefit of, at the direction of, or in association with a criminal street gang; and that defendant specifically intended to assist, further, or promote criminal conduct by gang members.

"Committing a crime in concert with known gang members can be substantial evidence that the crime was committed in 'association' with a gang." (*People v. Garcia* (2016) 244 Cal.App.4th 1349, 1367; *People v. Albillar* (2010) 51 Cal.4th 47, 60 ["association" can be established when "defendants relied on their common gang membership and the apparatus of the gang in committing" charged offenses].) Hai Nguyen testified that he and defendant were good friends and had known each other for 10 years. The prosecution's gang expert Tran opined that both defendant and Hai Nguyen were 454/EVO gang members. Nguyen also admitted as part of his plea agreement that he assaulted the Mai group for the benefit of a criminal street gang. The jury could reasonably infer from that testimony that defendant knew Nguyen was a gang member. Tran further testified that gang members are expected to help one another and to join in acts of violence to show loyalty to the gang. Based on that testimony, the jury could reasonably infer that defendant knew Nguyen would be duty-bound to help when defendant decided to attack the Mai group. That testimony counters defendant's argument that there were "no facts showing Nguyen intervened due to common gang membership" as opposed to intervening merely because he was defendant's friend.

"Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct" was committed for the benefit of a criminal street gang.[2] (*Albillar*, *supra*, 51 Cal.4th at p. 63. We emphasize that our sufficiency analysis is based on the law in effect when defendant

---

[2] *Albillar* directly contradicts defendant's contention that "[a]rguments that crimes benefit the gang because it will enhance the gang's reputation are insufficient to support a gang allegation" in this context, because under the law in effect when defendant was tried, reputational benefit could support a gang allegation.

14

was tried, under which evidence of reputational benefit could satisfy this second prong.) Tran opined that assaults benefit the 454/EVO gang's reputation by showing the gang is powerful and will respond to perceived disrespect with violence. He noted that even if the victim is not affiliated with a gang, an assault would make victims and witnesses fearful of reporting the gang's crimes. Indeed, Zaleski testified that his brother-in-law discouraged him from cooperating with police because the brother-in-law believed the assault was gang related. The foregoing is substantial evidence to support the finding that the assault was committed for the benefit of a criminal street gang.

If "substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Albillar*, *supra*, 51 Cal.4th at p. 68.) As we have discussed, there is substantial evidence to support a finding that defendant knew Hai Nguyen was a 454/EVO gang member. Evidence that defendant ran toward the fight between Nguyen and Zaleski supports a finding that defendant did so with the specific intent to promote, further, or assist Nguyen's criminal conduct.

Defendant criticizes the prosecution's gang expert as making "sweeping generalizations." To the contrary, we view Sergeant Tran's testimony as based on several years of personal investigation specifically into the 454/EVO gang, including surveillance, wiretaps, and interviews with gang members. Defendant also notes the absence of certain evidence often present in a gang prosecution (e.g., gang colors, slogans, and hand signs), and points to cases upholding gang allegations based on arguably stronger evidence than that presented to the jury here. But the *absence* of particular evidence does not render insufficient the evidence that *was* presented to and considered by the jury.

15

## C. THE DIRK OR DAGGER POSSESSION CONVICTION

Defendant was originally charged with possessing a concealed dirk or dagger (count 3) in the incident involving Officer Byers. Defendant moved under Penal Code section 995 to dismiss count 3 (as well as counts 4, 8, 15, and the gang allegations) for insufficient evidence. The prosecution opposed the motion, but conceded in its written opposition that count 3 "should be dismissed" because "the record is silent on whether the knife was located in an open position, and even suggests the contrary (knife was located concealed in [defendant's] crotch area." The trial court granted defendant's motion to dismiss that count. It is undisputed the prosecution never formally amended the written information to add count 3, nor did it seek to orally amend the information during trial.

Officer Byers testified about the folding knife in defendant's possession when he was arrested in December 2015. According to Chau Pham, one of the officers who search defendant and transported him to jail, the knife was found in a folded position clipped "right in the center of his belt where I guess the zipper area would be, the button of his pants or jeans." Officer Byers testified that the knife had been modified so that it "could be opened with a quick flick of the wrist and be deployed very quickly." Byers demonstrated for the jury how to open the knife, described by the court as follows: "Officer Byers has the knife in his right hand. It was initially in a position with the blade folded into the knife. He snapped his right wrist, causing the blade to come out into a straight position."

The parties discussed proposed jury instructions relating to count 3 after the close of evidence and outside the presence of the jury. Defense counsel questioned whether the folding knife met the legal definition of a dirk or dagger. The prosecutor argued that the testimony about modifications to the knife was sufficient to "take it to the jury, that the knife that we're dealing with is, in fact, a switchblade knife." The trial court indicated it would instruct the jury about the definition of a switchblade knife and that defense

16

counsel was "free to argue that, under [CALCRIM No.] 2502, that the knife in this case does not qualify ... because it wasn't found in a[n] exposed or locked position."  Defense counsel raised no objection based on count 3 having been dismissed.

Defense counsel stated in closing argument, "The defendant is charged with carrying a concealed dirk or dagger."  Counsel asked the jury to read the instructions about that offense carefully, and argued the instruction "says that a knife does not qualify under this test or definition because it is not found in a locked or exposed condition."  The jury was instructed with CALCRIM No. 2501 (possessing a concealed dirk or dagger) and a portion of CALCRIM No. 2502 (defining "switchblade knife"), which included the following:  "[D]efendant is charged in Count Three with unlawfully carrying a concealed dirk or dagger."  The jury was provided a verdict form for count 3, and the jury found defendant guilty of that count.  Defendant was ultimately sentenced on count 3 to one year four months (one-third the middle term).

### 1.  Sufficient Evidence Supports Defendant's Conviction

Defendant argues insufficient evidence supports his conviction for possessing a dirk or dagger.  A "dirk" or "dagger" is "a knife ... capable of ready use as a stabbing weapon that may inflict great bodily injury or death.  A nonlocking folding knife, a folding knife that is not prohibited by Section 21510 [i.e., not a switchblade], or a pocketknife is capable of ready use as a stabbing weapon that may inflict great bodily injury or death only if the blade of the knife is exposed and locked into position." (§ 16470.)  A closed switchblade, accordingly, may be a "dirk or dagger" if it is otherwise capable of "ready use as a stabbing weapon that could cause great bodily injury or death." (*People v. Plumlee* (2008) 166 Cal.App.4th 935, 941 [reversing magistrate's dismissal where folding knife found in defendant's pocket had a three-inch blade that could be opened in "a fraction of a second"]; § 17235 [" 'switchblade knife' means a knife having the appearance of a pocketknife ... which can be released automatically by a flick of a button, pressure on the handle, flip of the wrist or other mechanical device"].)

17

Whether a knife is a dirk or dagger is a question of fact for the jury. (*People v. Bain* (1971) 5 Cal.3d 839, 851.) Officer Byers testified that defendant's knife had been modified so that it could be opened with a flick of the wrist, which he demonstrated for the jury. That testimony provides substantial evidence to support a finding that defendant's knife was a switchblade. A rational jury could further conclude that, clipped inside the front zipper area of defendant's pants, the knife could be deployed with a flick of the wrist and was thus capable of ready use as a stabbing weapon.

### 2.  Defendant Forfeited the Challenge to Count 3

Defendant argued in his opening brief that count 3 must be reversed because it had been dismissed under section 995 and was never formally reintroduced. We invited supplemental briefing about whether defendant forfeited that challenge to count 3 by not objecting during trial.

"A person cannot be convicted of an offense (other than a necessarily included offense) not charged against him by indictment or information, whether or not there was evidence at his trial to show that he had committed that offense." (*In re Hess* (1955) 45 Cal.2d 171, 174–175.) But an information may be amended, even informally, at any stage of the proceedings (§ 1009) because "California law does not attach any talismanic significance to the existence of a written information." (*People v. Sandoval* (2006) 140 Cal.App.4th 111, 133.) A criminal defendant who fails to object at trial to a purportedly erroneous ruling generally forfeits the right to challenge it on appeal, unless a recognized exception applies. (*People v. Anderson* (2020) 9 Cal.5th 946, 961.) "The purpose of this [forfeiture] rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)

Defendant acknowledges he "technically forfeited" the issue, and we agree. Officer Byers testified about modifications to the knife, the main relevance of which was to establish that the knife was a switchblade. The trial court conferred with counsel about jury instructions related to count 3, with defense counsel then and in argument to the jury

18

asserting the knife did not meet the legal definition of a dirk or dagger. By not objecting despite unmistakable notice of the prosecution's intent to present count 3 to the jury, defendant forfeited his challenge based on the previous dismissal.

Relying on *People v. Anderson*, *supra*, 9 Cal.5th at p. 963, defendant asks that we exercise our discretion to decide the otherwise-forfeited issue because the "error was clear and obvious, affected a substantial right, and impacted the fairness of the proceedings." But *Anderson* involved five unpleaded enhancements totaling 125 years, and it was uncertain whether the prosecution would ask the court to impose sentence for the unpleaded enhancements until "the day of the sentencing hearing." (*Id.* at pp. 963–964 ["In its first two (of three) sentencing memoranda, the prosecution instead asked that the court impose lesser firearm use enhancements that had been pleaded."].) Here, defendant had ample notice that the prosecution would pursue count 3 before the matter was presented to the jury. The prosecution's technical error in not amending the information to reassert count 3 could have been easily corrected had defendant raised the issue at trial.

### 3. Counsel's Effectiveness as to Count 3

Defendant alternatively contends his trial counsel provided prejudicially defective assistance by not objecting to count 3 being presented to the jury. To establish ineffectiveness of trial counsel in violation of the right to counsel under the Sixth Amendment to the United States Constitution, a defendant must show both a deficiency in counsel's performance and a prejudicial effect of the deficiency. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216–217.) To prove prejudice from deficient performance, a defendant must affirmatively show a reasonable probability that, but for trial counsel's error, the result would have been different. (*Id.* at pp. 217–218.) Although we can discern no strategic advantage or other rationale for not raising the issue at trial, we "need not determine whether counsel's performance was deficient before examining the

19

prejudice suffered by the defendant as a result of the alleged deficiencies." (*Strickland v. Washington* (1984) 466 U.S. 668, 697.)

Had trial counsel objected regarding count 3, the prosecution could have moved to amend the information to assert that count. (§ 1009.) Defendant argues it is "speculative" the prosecution would have refiled the charge, having conceded that insufficient evidence was presented at the preliminary hearing as to that count. But the prosecution clearly proceeded on count 3 by actually presenting evidence and requesting that the jury be instructed on that charge. And as we have discussed, substantial evidence was presented to the jury. As defendant has not demonstrated prejudice from the failure to object, he cannot meet his burden to show ineffective assistance of counsel.

### D. SENTENCING ISSUES

#### 1. The Weapon Enhancements were Improperly Stayed

The parties agree that the trial court improperly stayed punishment for the section 12022, subdivision (b)(1) weapon use allegations for counts 6, 7, 11, and 13. That punishment can either be imposed or stricken under section 1385, subdivision (b)(1); it cannot be stayed. (See *People v. Flores* (2005) 129 Cal.App.4th 174, 187 [distinguishing a "stay" as "a temporary suspension ... until the happening of a defined contingency" from the "unconditional deletion" that is a "striking"].) We will remand the matter with instructions for the trial court to exercise its discretion and determine whether to impose or strike that punishment.

#### 2. Amendments to Section 1170

Defendant argues the upper term sentences for counts 5 and 9 must be vacated and the matter remanded so that he can receive the benefit of recent amendments to section 1170. The Attorney General agrees defendant is entitled to the benefit of those amendments under the reasoning of *Estrada*, *supra*, 63 Cal.2d 740, but argues reversal is not required because any error was harmless.

20

When defendant was sentenced, trial courts had broad discretion under section 1170, subdivision (b) to select the "appropriate term" for offenses having a prescribed sentencing triad. (Former § 1170, subd. (b); Stats. 2018, ch. 1001, § 1.) Under amendments to that section effective January 1, 2022, trial courts are now generally required to select the middle term (§ 1170, subd. (b)(1)) and may impose an upper term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) A trial court may consider "defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

The trial court stated it relied on factors in aggravation listed in the probation report, which included the "great deal of violence" inflicted, defendant's use of a weapon, defendant's violent criminal history, his poor prior performance on probation, his prior prison term, and a history of gang association. Not all of those factors were found true beyond a reasonable doubt. We need not resolve how to address the effect of that departure from the current law (an issue now pending before the California Supreme Court in *People v. Dunn* (2022) 81 Cal.App.5th 394, rev. granted Oct. 12, 2022, S275655), because this case will be returning to the trial court on other issues. We will therefore vacate the sentences for counts 5 and 9 so that defendant may be resentenced consistent with the version of section 1170 in effect as of the time of resentencing.

### 3. Amendments to Section 654

When defendant was sentenced, section 654 precluded multiple punishment for an act or omission punishable in different ways, and also mandated that the single punishment imposed reflect the "provision that provides for the longest potential term of imprisonment." (Former § 654, subd. (a); Stats. 1997, ch. 410, § 1.) Consistent with that

21

section, the trial court sentenced defendant on count 5 (attempted murder) and stayed the sentence for count 9 (mayhem). Section 654 now gives trial courts discretion to impose the shorter term of imprisonment. (§ 654, subd. (a).) We agree with the parties that defendant is entitled to resentencing on counts 5 and 9 under the reasoning of *Estrada*. (Accord *People v. Mani* (2022) 74 Cal.App.5th 343, 379.) We will remand the matter to allow the trial court to exercise its discretion to decide which punishment to stay.

### 4. Amendments to Section 1385, Subdivision (c)

While this appeal was pending, the Legislature amended section 1385 to "enumerat[e] certain mitigating circumstances which the trial court—'[i]n exercising its discretion'—is to 'weigh[] greatly' in favor of dismissal of an enhancement, unless 'dismissal of the enhancement would endanger public safety.' " (*People v. Ortiz* (2023) 87 Cal.App.5th 1087, rev. granted April 12, 2023, S278894; quoting § 1385, subd. (c)(2).) The parties agree that because the case must be remanded for resentencing, the amendments to section 1385 will apply to defendant's case. (§ 1385, subd. (c)(7) ["This subdivision shall apply to all sentencings occurring after January 1, 2022."].)

### III. DISPOSITION

The judgment is reversed. The matter is remanded for possible retrial on the substantive gang count and the gang special allegations. Following retrial (or the prosecution's election not to retry the gang count and allegations), the trial court is directed to resentence defendant consistent with Part II.D. of this opinion. Once defendant is resentenced, the clerk of the superior court is directed to prepare and transmit to the California Department of Corrections and Rehabilitation a new abstract of judgment.

22

_____

Grover, J.

**WE CONCUR:**


_____

Greenwood, P. J.


_____

Lie, J.


**H047242**
*The People v. Lee*